**Paul L. BRIGGS and Cindy Briggs, his wife, Plaintiffs-Appellants,**

**v.**

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Respondent.**

**No. 13384.**

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 8, 1984.

Lloyd G. Briggs, Briggs & Briggs, Sikeston, for plaintiffs-appellants.

Donald L. Dickerson, Jeffrey S. Maguire, Thomasson, Dickerson, Gilbert & Cook, Cape Girardeau, for defendant-respondent.

TITUS, Judge.

Defendant State Farm Fire & Casualty Company by its policy issued June 20, 1980, insured a house owned by plaintiffs, husband and wife. Exactly four months thereafter or on October 20, 1980, there was a fire at the premises. The fire was said to have been set by a burglar-arsonist who allegedly possessed a key to the house and who perished in the flames. Defendant paid plaintiffs some $32,000 because of fire damage to the property. Included in that figure was a $3,000 allowance on plaintiffs' claim for lost rent. Defendant refused plaintiffs' claim for fire damage to personal property. This prompted plaintiffs to sue for personal property damage, vexatious refusal to pay and for attorney fees. The trial court directed a verdict for defendant at the conclusion of plaintiffs' evidence and plaintiffs appealed.

As pertinent here, the policy provided: "COVERAGE B—PERSONAL PROPERTY ... Property Not Covered. We do not cover: ... 7. property regularly rented or held for rental to others by any insured, except property of an insured in a sleeping room rented to another by an insured."

At the time of the fire plaintiff Paul Briggs, son of Lloyd G. Briggs, Sr. and Juanita Briggs, was incarcerated in a federal penitentiary and had been so incarcerated for an extended period of time prior thereto. Plaintiff Cindy Briggs, wife of Paul, was pregnant at the time of her husband's incarceration and near the commencement of the imprisonment left the insured house and moved in with her inlaws.

Juanita Briggs testified that she rented the house furnished, in part, to Bob Scanlon on a month-to-month basis at a monthly rental of $250. He was given a key to the house. Mrs. Briggs recounted "I think [Scanlon] rented it in July ... but maybe it was August" 1980. Scanlon continued renting until the October fire. In addition to the cash rental, Scanlon "was to take care of the yard; he was to water the trees that we had just planted, some 15 or 20 fruit trees ... and he was to keep everything neat and clean." Scanlon "was to have the light bill put in his name" and was to have use of the TV room (converted by Mrs. Briggs into a bedroom), the kitchen and the living room. Although not expressly mentioned in the testimony, it appears that of necessity Scanlon would also have use of a bathroom in the leased house.

In its ordinary sense the word "room" means a single enclosure separated by partitions or other means from the other parts of a house or building. *State v. Barge*, 82 Minn. 256, 84 N.W. 911, 913, 53 L.R.A. 428 (1901); 77 C.J.S. Room, pp. 538–539; Webster's Third New International Dictionary of the English Language—Unabridged, Room, definition 4 a at p. 1972. An adjective modifies a noun to denote a quality of the thing named, or to indicate its quantity or extent. Webster's New Collegiate Dictionary, Adjective, p. 15. Consequently, the adjective "sleeping" used as here to modify the noun "room," connotes that the single room excepted from the exclusion in the policy in question is only for purposes of sleeping and, of course, for such other limited activities that are necessarily associated with sleeping.

In the instant case Scanlon was not the renter of a mere sleeping room at the house but the renter of the entire premises with leave to use a bedroom, a kitchen, a living room and a bath. Unlike the renter of a sleeping room, Scanlon had the responsibility of tending the yard about the house and the newly planted fruit trees and the duty to keep everything neat and clean. Unlike the renter of a sleeping room, Scanlon was solely responsible for the electrical bill for the entire property.

The rules of construction applicable to insurance contracts require that the language used be given its plain meaning and if the language is unambiguous the policy must be enforced according to such language. *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). It is this writer's opinion that no mystery reposes in the provision that personal property in the insured premises regularly rented to others is not covered unless that property be situate in a sleeping room rented to another by an insured. There is no contention or doubt that plaintiff Cindy Briggs fully acquiesced in the renting of the property, real and personal, to Scanlon by Mrs. Briggs on the conditions and terms previously explained. As we have demonstrated, supra, the leased premises cannot be legally classified within the exception of a sleeping room. Therefore, we rule the court nisi properly found the insurance inapplicable to the situation and circumstances presented and correctly directed a verdict in favor of the defendant. Ergo, the judgment below is affirmed.

CROW, P.J., and HOGAN and MAUS, JJ., concur.

PREWITT, C.J., concurs in result only.